Please be seated. Ms. Clare, could we call the next case, please? 3-11-07-49, School of the State of Illinois, Appalachia, Benary Connecticut v. Roberto Rodriguez, Appellant Kurt Gustafson. Mr. Gustafson. Thank you, Your Honor. Good afternoon. May it please the Court, Counsel. My name is Kurt Gustafson. I represent the appellant, Roberto Rodriguez. Mr. Rodriguez, as you're aware, was found guilty after a jury trial for aggravated driving under the influence of alcohol, as well as aggravated driving on a revoked license. At the time of the initial traffic stop, which occurred in Crest Hill, he was detained. He was administered standardized field sobriety tests, and during the search incident to the arrest, the officer, Deputy Chief Clark, retrieved what were termed four beer tokens. I believe they're akin to a casino chip, essentially, which indicates that the bearer is entitled to, on three of the tokens, one free bottle. On one of the tokens, it indicated one six-pack. How do you acquire those things? I have to admit my naivety. I've been more experienced. It's been a while since I think I've had the experience that I would have been in that situation myself. I think sometimes it may be something that's just given away at a bar. It may be, if you know the bartender, it may be that if you've bought a couple of rounds, then all of a sudden they're going to maybe cop you one, something along those lines. It could be a friend gave it to you. And that's one of the things where this question really raises itself, because we don't know how it came into possession of those tokens. For one thing, there was some discussion and testimony elicited that the officer did receive an indication from the defendant that he was drinking at an establishment called Gusto's, which was near where he was pulled over. Three of the beer tokens came from a different establishment called Bobby's Tap. That is relatively near the area where he was also stopped. The fourth token was from a place called Spivey's, which was in Cold City, which is far and away from where he was stopped. There are no dates on these chips or tokens. There is no indication as to how or when he may have received them, how long they may have been in his possession. I mean, there's times when somebody has things that they leave in their pocket, it goes through the wash, you wear that same pair of jeans a week or two later, and you reach into your pocket and there it is. If you're lucky, you pull out a $20 bill. In this instance, there were these beer tokens that were found. We don't know how they got there. We don't know when he received them. We don't know in what fashion he may have received them. And that's the crux of the problem here. These tokens were admitted, and in admitting these tokens, or the testimony regarding these tokens, it caused there to be a cloud of suspicion on Mr. Rodriguez insofar as his testimony or his statement to the officer that he had a couple of drinks. The indication, in fact, I believe the trial court said that an inference can be drawn by the jury when confronted with this evidence that his credibility could be questioned as to the truthfulness of that statement because he was found with these tokens in his possession. Couldn't a similar inference be drawn maybe for someone who has more experience with beer tokens that for every beer token you have in your pocket is a beer you didn't drink? So it would lend itself to he only drank the two he said he drank? That is a possibility, but I think the fact that it could potentially cut both ways lends itself to the problem that we have here in terms of this evidence being brought in, the fact that it was specifically brought in by the state for the purpose of trying to cast this shadow on Mr. Rodriguez that he wasn't being truthful when he said he had a couple of drinks, that he must have had more than these couple of drinks because, look, he's got all these beer tokens. If perhaps there was the issue of any of these beer tokens coming from the actual establishment that he admitted to coming from, maybe there would be a different story. But none of these tokens came from that establishment, and there is no admission or testimony or any evidence that was brought out that showed that he was at either of those other two establishments on that date or any other date for that matter. But the fact that those tokens were admitted, I believe, should cast that inference of him being untruthful to the officer based upon those items being found. As I stated in the brief, this is akin, in my estimation, to the situation of People v. Salgado where the court found that admitting evidence that the defendant was able to post $75,000 after his arrest essentially cast a shadow on him of being somebody who has the access to that type of money, the type of person who would be likely to deal drugs. That was later found that that evidence should not have been brought in, and I believe likewise that the beer tokens in this instance should not have been brought in as they were more prejudicial than probative in their value. And those tokens in this case have no probative value? I would argue, given the fact that they were undated and given the fact that they are not from an establishment where he admitted to being, I would believe that they would have no probative value. The second point, unless there are other questions in regards to the first point, is that at the end of the trial, during the closing argument, the state made comment that if they had proven the elements of count one of their case, which was I believe the aggravated driving under the influence of alcohol, and they had proven the elements of count three of their case, which was the aggravated driving under the license revoked, that the jury must find the defendant guilty of count two, which was aggravated driving under the influence while one's license was revoked. While logically that makes sense, the problem is there's a very serious issue in terms of a state's attorney telling a jury that they must find someone guilty. The fact that we know this to be true is that the judge sui sponte interjected and advised the jury, you are the sole judges of whether or not somebody is guilty or not guilty in this case. You do not have to find anybody guilty. That is your decision to make. Now the trial court did everything in their power to try and correct the mistake that was made, and I commend Judge Vermilla for his actions in doing so. However, I disagree with his later ruling at the post-trial motions that the mistrial should not have been granted at that point. Even though the court did everything in its power, and even though it gave the curative instruction, I believe that the statement that a jury must find someone guilty is such a strong statement and usurping the authority of both the judge as well as the jury that it was not able to be cured by the instruction. I believe that the motion for mistrial should have been taken at that point and that it was error for the court to not allow that.  The court's well aware, of course, of the Strickland standard. I think it's been argued several times just in the afternoon I've been here. What we had was a situation where the wife of the defendant was present with him throughout the various points, at least throughout the day, if not the vast majority of the day. She was with him prior to him getting in his vehicle and leaving the establishment where they had been at Gristow's Bar. She was traveling in front of him and noticed at one point that he was no longer behind her, so she doubled back and saw that he was being questioned by the police and she indicated that she did witness at least part of the standardized field sobriety testing. The trial counsel in this matter did not call her. Now, normally the decision to call or not call a witness obviously is within the sound discretion of the trial counsel. However, what we have here is the unusual situation of this decision was made well before there was any attempt or setting of the trial date. The wife of the defendant was allowed to be present at the voir dire in the selection of the jury. She was allowed to be present during the entire process of the trial. This is an indication that the decision was made well in advance, that she was not going to testify no matter what. I understand that there may be issues that a trial counsel may want to avoid. I understand, as was pointed out, that she would not be the perfect witness, that there is the evidence or issue of potential bias because of the fact that it is a husband and wife situation. But there's never going to be, in a situation like this, when somebody's out at a drinking establishment, a perfect witness for anybody. If you're out at a drinking establishment, you're with one of three people. You're either with family, you're with friends, otherwise you're by yourself. Rare, if ever, is the occasion where the proverbial busload of nuns happens to be there sitting with you having a beer. That being said, the fact that that decision was made in advance, the fact that that decision to completely disregard a witness who could assist you in the defense of your case prior to hearing one bit of the evidence that the state was going to put on, I believe does constitute more than an error of just discretion on the part of a trial counsel. As the state pointed out, the Strickland test has two general problems, the incompetency as well as the prejudice. I think the fact that he did not ever consider putting on the defendant's wife it doesn't appear that he attempted to adequately prepare either the wife or his client for any potential testimony of this case, do constitute incompetence. But did Mr. Roderick Reiter say that he doesn't claim that his attorney never interviewed her, right? Just that he had made an arbitrary decision that he was not going to put her on the stand? I believe that she was present. I believe at various points during discussions between Mr. Rodriguez and his counsel, so I believe that it would be fair to say that she was interviewed at a certain point. But yes, I would agree that the fact that she was just however completely dismissed as a potential witness is staggering. Was she with him the whole evening? My recollection is that she was with him the whole evening at the bar. It was my understanding, if I recall correctly, it was a family gathering that day. However, they did leave in separate vehicles. She was in a vehicle that preceded him. He was following her in his vehicle, and at that point, as I said, at a certain point, she did lose sight of him and turned back around to see what was the matter, and that's when she came upon the sight of him being questioned by the police at that point. If there are any further questions, I think. I don't think so. Thank you very much, Mr. Gustafson. Thank you, Commissioner. Mr. Genetovic, are you any more expert than Mr. Gustafson? Mr. Gustafson or me on this issue? Unfortunately, I'm not. In fact, I was going to try to finance that question myself. I didn't expect you to be. Thank you. With respect to the first issue here, we're here to take and determine whether or not a trial judge abuses discretion in admitting the beer tokens. Generally, any evidence that makes an existence of a fact more or less probable is relevant. In this case, the trial judge determined that the beer tokens were relevant because the defendant testified that he had only two beers and he was at a particular tavern, yet he had beer tokens that were from other taverns. Was it an intentional deception on his part to throw the police off? Did he go to these other places and, as was suggested, maybe bought so many rounds and got tokens, etc., etc.? We really don't know. But the point of the matter is the fact that the beer tokens are relevant. They're relevant as to his consumption of alcohol. They're relevant to the DUI. They're relevant to his credibility. They're relevant to where he was that night, how much he drank. They're only relevant if they're facts that show that he actually acquired them that night. But that goes, I think, that, as well as everything else the counsel said, as well as what Justice O'Brien said, a lot of that goes to the weight of the evidence, not necessarily its admissibility. It's all speculation. What's its probative value? Its probative value is the fact that he has these beer tokens on his person that are from a different establishment. He claims he was at Gusto. He had to stop a block away from Bobby Stafford. Where did this happen? He claimed he drank at Gusto. What city were we in? I don't know. Oh, I don't know the name of the city. Was it Crest Hill, I think? Crest Hill. But Bobby Stafford, supposedly, was a block away from where the stop was. So if he had come from Bobby Stafford, but by saying that he had been someplace else, what he was trying to do is he was trying to be deceptive. So what the trial just said is the trial just says at least these tokens raise an inference that the state should be allowed to take an argument. And everything else that counsel says, everything that you say, Your Honor, goes toward the weight, goes toward what the jury could consider this as. But I don't think it necessarily goes toward this admissibility. Okay. What if he just decided when he was leaving the house he didn't know exactly where he was going to go to drink, he had these tokens from another night, he stuck them in his pocket, and then decided to go to a bar that they didn't apply to? That's as reasonable a scenario as yours, and there's nothing to support one way or the other. It's pure speculation that you're dealing with. There's nothing to support that, because I know this ties in with counsel's argument about the ineffectiveness of assistance, but the defendant could obviously testify to that. They could have brought somebody else in, the wife, and possibly testified, or somebody else could have. Okay, but he doesn't have an obligation to prove his innocence. He doesn't have an obligation to testify. You have the obligation to prove your case. That is true. With facts. And he possessed beer tokens, did he not? But you don't know when he had them, how he got them, and no facts tied into any alcohol. Well, that's not true, because basically he testified to drinking. Do we have to take and establish that he was actually at that establishment in order to have these beer tokens be relevant with respect to drinking? Yes. I respectfully disagree. Okay. Yes. In the event that we found that it was an abuse of discretion, is the error of a nature that this has to be reversed, or is it such that any error that is there is? I think this is subject to a harmless error argument. I think that in this particular case, an evidentiary error in the admission of evidence is subject to a harmless error analysis, and you would take a look to see if the remaining competent evidence that was admitted was sufficient. And in this particular case, what we have is, besides the fact of the erratic driving, besides the fact of the strong odor of alcohol, and the standard bloodshot glassy eyes, the slurred speech, et cetera, we have the failure of three field sobriety tests, as well as his admission to drinking, which I realize is only two, and whether or not that's enough depends upon the individual, obviously. But then we also have his refusal to take the breathalyzer test. And so, all in all, when you look at the totality of the remaining competent evidence, even if you extract the beer tokens, I think that there is adequate evidence present to prove the defendant guilty of driving under the influence beyond a reasonable doubt. So I think that if there is, in fact, error here, that this error is harmless, and that this condition would, none of us, still be sustained. Now, with respect to the second argument, I dare say that I would think that the prosecutor probably would like to have chosen her words a tad bit different than what she said. Obviously, taking and saying that a jury has to take and make a particular finding, that they have to take and find somebody guilty, is incorrect. It is not appropriate because the jury has the power of lenity, and obviously the jury can make whatever decision they want to make. I think that in this case, when you look at the prosecutor's argument, I think if you consider the fact of what she was trying to say. She just didn't say, well, because he was drinking and because of this, therefore he's guilty. What she was trying to do, I think, is she was trying to avoid inconsistent verdicts. That's what I think she was trying to do. Because, as it turned out, count two, the aggravated DUI, was based on the fact that he was driving while his license was revoked was the aggravating factor, and driving while revoked was based on a prior DUI. So I think that the count one aggravated DUI was his fourth violation. So I think what she was simply trying to say is, basically, if you've got the elements, and if you find him guilty of count one, she just didn't say, you know, found him guilty of count two for no reason. If you find him guilty of count one, then he's basically, and if you look at the issues instructions, that he's guilty of DUI and it's his fourth violation. And then if you also think you can find that, and of course the elements for the aggravated driving while revoked is pretty simple, driving, and you're driving while you're revoked are the only elements. If you find those two, and that, if you find him guilty of that, then rather than saying you must find, she probably should have articulated it differently in the fact that this should, you know, these elements are now established with respect to count two, that they will lead you to be able to find him guilty of that. I think what she was trying to do is she just didn't want a not guilty on the aggravated DUI, because sometimes what juries might do is, well, we got him convicted on the first DUI with the prior, we got him with the driving while license revoked, rather than not return a verdict, what they'll do is they'll sign a not guilty on the count two. This has happened, and I've dealt with cases that that's happened in, and I think what she was, all she was trying to do was trying to direct them or trying to help them so they don't, wouldn't come back with the inconsistent verdict, because then all of a sudden they open up another whole can of worms and the judge has to send them back and et cetera, et cetera. So I think that's all that she was trying to do. Yes, unfortunately, words were not carefully chosen. Notwithstanding, even if it is error, again, this error is harmless, she just didn't say convict this guy because he's a bad person. What she was trying to do is, I think she was trying to take and do the right thing, I think she just chose the wrong words. With respect to issue three, ineffective assistance, by and large, the best way that I can sum up what ineffective assistance of counsel argument here is, is the fact that the defendant really wants this court to find that trial counsel was ineffective for allegedly doing or not doing something to the defendant, based on the possibility that there might be some nonspecific, unidentifiable evidence that might be, could be presented, that in some way, shape, or form might be, could be, or in some way, shape, or form raise a question as to his guilt or somehow affect the performance on his field sobriety test that in turn might somehow have an effect on the verdict. Everything is way too nonspecific, everything is so broad and so nebulous, it's hard to put your finger on exactly what defendant and what counsel here is really trying to get at with respect to the defective representation. Counsel made a decision that the wife would not be a good witness. Mind you, she did testify, she did state, I was with my husband all day, throughout the day, he was not intoxicated, he didn't have anything to drink. Defendant admitted to the officer he had two beers. We got an inconsistency right off the top. And in addition, it seemed as though she was talking about what she could see and what she couldn't see, yet she wasn't even present. She didn't even realize her husband hadn't pulled over. I mean, how aware, how cognizant was she of what was going on in back of her? She didn't even realize that the police had pulled her husband over. So she was long gone until she realized he wasn't behind her anymore. My point is, I simply think, and I truly don't know what counsel's decision is all based on, in the post-trial motion, it was an attempt was made to try to get at, and I realize we have attorney-applying privilege, but what we're doing is we're raising here ineffective assistance of counsel, what counsel did or didn't do, what he said or didn't say, when the prosecutor tried to take and probe into that area, it was met with an objection that was sustained. So we don't know what went into counsel's thoughts. But my thought is, off the top, just seeing that, is I have here a wife who would be willing to take the stand and testify to most anything to help her husband, who would be the most incredulous and incredible person in the world to put on. I would feel as though I gave more ineffective assistance by putting her on than by keeping her on. And trying to argue that the evidence that was presented by the state was clearly insufficient. Outside of the driving while license revoked, that's fairly clear, but at least as far as the DOI is concerned, argue the evidence that way. So I don't really see on this record, based on what we have and based on what counsel did and what counsel had to work with, that necessarily provided defective representation simply because of the fact that he didn't present, or had even made the decision long before not to put the wife on. I don't think when you make the decision, it's the fact of making the decision and making it properly. At the very least, even if one were to assume defective representation, defective action on the part of counsel, I don't think there was any prejudice here. Again, you look at the same facts, and certainly, I don't see how there could be any prejudice at all. Even if the wife could understand and testify that her husband was as sober as sober could be, and that he had this malady and that malady that precluded him from doing the field sobriety test, how is that going to affect the verdict on the aggravated driving while license revoked? It doesn't. It has no impact at all. She can testify all she wants. He was driving, and he was driving while revoked. I think that carries over now also into the other elements of the DUIs as well. I don't think that the defendant has established any kind of prejudice as a result of, if we assume that counsel's representation was defective, that the defendant was prejudiced at all in this case. So, having said that, I think people, with respect to the request that this court affirm the defendant's convictions and sentences, and if there are any more questions, I'll be happy to try to respond. Thank you very much. Thank you, Mr. Kennedy. Mr. Gustafson, any rebuttals? Counsel was addressing the issue of, as far as the real tokens, perhaps, whether or not it would constitute harmless error, the fact that those were let in, and respectfully, I would suggest that the admission of those tokens would not be harmless error. While there were certainly other evidence of being intoxicated, I would suggest that those are all speculative, there are things for which there was not a concrete determination. He refused the breathalyzer, that's absolutely true, but the fact that he refused the breathalyzer does not give us what his breath alcohol content was on the night he was stopped. And while the courts have obviously held that the jury may consider that as evidence of consciousness of guilt, that does not require the jury to consider that as evidence of consciousness of guilt. Field sobriety testing is something that is subject to interpretation. When you do a one-leg stand test, you have to keep your arms at your side, you can't hop, you can't sway, but then the question is, how far did you sway? It's supposed to be no more than six inches. How quantifiable is that to the police officer that night? Does he measure it exactly? Is he eyeballing it? Obviously he's not going to stand there with a ruler. Some may be more aggressive in determining that he swayed or did not sway. Putting one's foot down, hopping, obviously those are more concrete evidence, but you can put your foot down one time, and that can still be counted against you. And if you have enough of those little indicia, then that constitutes a failure. You can literally do 98% of a field sobriety test correctly and still have it constitute a failure against you. Now in this instance, was it that close? I would suggest it probably was not, but there were other problems that Mr. Rodriguez had. There were various physical ailments, which counsel alluded to, that were not brought out because his counsel failed to bring both his client as well as his client's wife to the stand to try and contest those. Based upon all of those factors, I would still suggest that the admission of those tokens was error, and it was not harmless error, and based upon that, we would be seeking a new trial for Mr. Rodriguez. Thank you. Thank you, Mr. Gustafson, and thank you both for your hard work today. We will take this matter under advisement and get back to you with a written disposition within the short term. We will now take a short recess.